**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**DUKE ELLINGTON TILLEY, JR.** **CIVIL ACTION**

**VERSUS** **NO. 25-1037-BAJ-EWD**

**UBER TECHNOLOGIES, INC.**

**NOTICE**

Please take notice that the attached Magistrate Judge's Report and Recommendation has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on July 22, 2026.

Erin Wilder-Doomes

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

**DUKE ELLINGTON TILLEY, JR.** **CIVIL ACTION**

**VERSUS** **NO. 25-1037-BAJ-EWD**

**UBER TECHNOLOGIES, INC.**

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Before the Court is the Motion to Compel Arbitration and Stay Proceedings (the "Motion"),[1] filed by Uber Technologies, Inc. ("Defendant"). Duke Ellington Tilley, Jr. ("Tilley" or "Plaintiff") opposes the Motion[2] and Defendant has filed a reply memorandum.[3] Oral argument is not necessary. After careful review of the record evidence and the arguments of the parties, it is recommended that the Motion be granted, compelling arbitration and staying the proceedings in this Court.

## I. BACKGROUND

Plaintiff filed his original Petition for Damages in Louisiana state court on or about October 7, 2025, alleging claims under the Louisiana Employment Discrimination Law for age and/or race discrimination.[4] Defendant removed the case to this Court, alleging that the basis for subject matter jurisdiction is diversity of citizenship under 28 U.S.C. 1332.[5] Defendant now seeks to compel

[1] R. Doc. 8. Documents in the Court record are referred to as "R. Doc. __."

[2] R. Doc. 9.

[3] R. Doc. 14.

[4] R. Doc. 1-4.

[5] R. Doc. 1, p. 1, introductory para., ¶ 9. The Court's subject matter jurisdiction under 28 U.S.C. § 1332 has been adequately established. The Notice of Removal alleges that the amount in controversy is met based on Plaintiff's claims in the Petition that he consistently made around $1200 a week. R. Doc. 1, ¶ 14, citing R. Doc. 1-4, ¶ 6. Defendant states that Plaintiff's lost wages total approximately $52,000 from the deactivation of his account (December 7, 2024) through the filing of the Petition (October 7, 2025). R. Doc. 1, ¶ 14. Defendant also states that Plaintiff will suffer approximately an additional $64,272 dollars in damages from the filing of the Petition to a potential trial on the merits based on the shortest median time in this Court from the filing of the Petition through trial. R. Doc. 1, ¶ 15. Therefore, the required amount in controversy is met because Plaintiff's economic damages in controversy

arbitration based on the 2022 Rasier Platform Access Agreement ("Rasier PAA"), which contains the following relevant provisions:

> **13. Arbitration Provision**
>
> **IMPORTANT: PLEASE REVIEW THIS ARBITRATION PROVISION CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH US ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION, EXCEPT AS PROVIDED BELOW. YOU MAY OPT OUT OF THIS ARBITRATION PROVISION BY FOLLOWING THE INSTRUCTION BELOW. THERE ARE AND/OR MAY BE LAWSUITS ALLEGING CLASS, COLLECTIVE, COORDINATED, CONSOLIDATED, AND/OR REPRESENTATIVE CLAIMS ON YOUR BEHALF AGAINST US. IF YOU DO NOT OPT OUT OF THIS ARBITRATION PROVISION AND THEREFORE AGREE TO ARBITRATION WITH US, YOU ARE AGREEING IN ADVANCE, EXCEPT AS OTHERWISE PROVIDED BELOW, THAT YOU WILL NOT PARTICIPATE IN AND, THEREFORE, WILL NOT SEEK OR BE ELIGIBLE TO RECOVER MONETARY OR OTHER RELIEF IN CONNECTION WITH, ANY SUCH CLASS, COLLECTIVE, COORDINATED, CONSOLIDATED, AND/OR REPRESENTATIVE LAWSUIT. THIS ARBITRATION PROVISION, HOWEVER, WILL ALLOW YOU TO BRING INDIVIDUAL CLAIMS IN ARBITRATION ON YOUR OWN BEHALF.**
>
> **13.1 How This Arbitration Provision Applies.**
>
> (a) This Arbitration Provision is a contract governed by the Federal Arbitration Act, 9 U.S.C. § 1, et seq., and evidence a transaction involving commerce, and you agree that this is not a contract of employment involving any class of workers engaged in foreign or interstate commerce within the meaning of Section 1 of the Federal Arbitration Act. If notwithstanding the foregoing, the Federal Arbitration Act does not apply to this Arbitration Provision, the law pertaining to arbitration agreements of the state where you reside when you entered into this Agreement shall apply. Except as it otherwise provides, this Arbitration Provision applies to any legal dispute, past, present or future, arising out of or related to your

total $116,272. R. Doc. 1, ¶ 16. The Notice of Removal adequately alleges the citizenship of Defendant, a corporation, as Delaware (place incorporation) and California (principal place of business). R. Doc. 1, ¶ 11. Although the Notice of Removal did not adequately allege Plaintiff's citizenship, Defendant filed an Amended Notice of Removal in response to this Court's Order (R. Doc. 2) that adequately establishes Plaintiff's Louisiana citizenship. R. Doc. 7, ¶ 11; R. Doc. 7-1. As the parties are of diverse citizenship and the amount in controversy is more than $75,000, exclusive of interest and costs, this Court may exercise subject matter jurisdiction over the case.

relationship with us or relationship with any of our agents, employees, executives, officers, investors, shareholders, affiliates, successors, assigns, subsidiaries, or parent companies (each of which may enforce this Arbitration Provision as third party beneficiaries), and termination of that relationship, and survives after the relationship terminates.

(b) This Arbitration Provision applies to all claims whether brought by you or us, except as provided below. This Arbitration Provision requires all such claims to be resolved only by an arbitrator through final and binding individual arbitration and not by way of court or jury trial ….

(c) Except as it otherwise provides, this Arbitration Provision also applies, without limitation, to disputes between you and us, or between you and any other entity or individuals, arising out of or related to your application for and use of an account to use our Platform and Driver App as a driver … your contractual relationship with us or the termination of that relationship … discrimination … and claims arising under … Title VII of the Civil Rights Act of 1964 … Age Discrimination in Employment Act … federal, or local statutes or regulations addressing the same or similar subject matter, and all other federal, state or local statutory, common law and legal claims (including without limitation, torts) arising out of or relating to your relationship with us or the termination of that relationship.[6]

***

**By clicking "Yes, I agree," I expressly acknowledge that I have read, understood, and considered the consequences of this Agreement, that I agree to be bound by the terms of this Agreement, and that I am legally competent to enter into this Agreement with Uber.**[7]

## II. LAW AND ANALYSIS

### A. Legal Standards

The Federal Arbitration Act ("FAA") provides that written agreements to arbitrate disputes arising out of transactions involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract

[6] R. Doc. 8-1, pp. 26-27, ¶¶ 13, 13.1.

[7] *Id.*, at p. 39 (emphasis in original).

or as otherwise provided in chapter 4."[8] Further, the FAA allows "a party aggrieved by the alleged … refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States district court...for an order directing that such arbitration proceed in the manner provided for in such agreement."[9]

Generally, a two-step inquiry governs whether parties should be compelled to arbitrate a dispute. "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement."[10] Usually, both steps are questions for the court.[11] However, when the arbitration agreement contains a delegation clause giving the arbitrator the primary power to rule on the arbitrability of a specific claim, the analysis changes.[12] When there is a clear and unmistakable delegation clause, courts do not have the power to decide whether the claims are arbitrable. Delegation clauses are enforceable and transfer the court's power to decide arbitrability questions to the arbitrator. Thus, a valid delegation clause requires the court to refer a claim to arbitration to allow the arbitrator to decide gateway arbitrability issues.[13]

When the party seeking to compel arbitration points to a purported delegation clause, the court's analysis is limited to the first step, *i.e.*, whether the parties agree to arbitrate the dispute. If the court finds that there is a valid agreement to arbitrate, then the only other question is whether the purported delegation clause is in fact a delegation clause. In other words, whether the delegation clause shows the parties' intent to have the arbitrator decide if a particular claim must

---

[8] 9 U.S.C. § 2.

[9] 9 U.S.C. § 4.

[10] *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original).

[11] *Id.*, citing *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003).

[12] *Id.*, citing *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 942 (1995).

[13] *Id.* at 202, citing *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68–69 (2010).

be arbitrated.[14] If there is a delegation clause, the motion to compel arbitration should almost always be granted, unless the argument for arbitration is "wholly groundless."[15]

**B. The Parties Agreed to Arbitration**

Whether the parties entered a valid arbitration contract turns on state contract law.[16] The courts "apply 'ordinary state-law principles that govern the formation of contracts' to determine whether an arbitration contract was formed."[17] If the existence of an arbitration contract between parties is challenged, that challenge is always for the courts to decide.[18] The Supreme Court has suggested certain categories of arguments that go to the question of the existence of an agreement to be decided by the courts, including "whether the alleged obligor ever signed the contract, whether the signor lacked authority to commit the alleged principal, and whether the signor lacked the mental capacity to assent."[19] Once the arbitration contract itself has been established, however,

---

[14] *Id.*

[15] *Kubala,* 830 F.3d at 202 n.1.

[16] *Id.* at 202, citing *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012); *see also Morrison v. Amway Corp*., 517 F.3d 248, 254 (5th Cir. 2008 ("The 'federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties.' *Fleetwood Enterprises Inc*., 280 F.3d at 1073. That determination 'is generally made on the basis of "ordinary state-law principles that govern the formation of contracts."' *Id.* (quoting *First Options of Chicago Inc. v. Kaplan*, 514 U.S. 938, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995)").

[17] *IMA, Inc. v. Columbia Hosp. Med. City at Dallas, Subsidiary L.P.*, 1 F.4th 385, 390-91 (5th Cir. 2021), citing *First Options of Chi., Inc.*, 514 U.S. at 944.

[18] *Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 725 (5th Cir. 2020), citing *Will-Drill*, 352 F.3d at 219. Regardless of whether the arbitration clause at issue contains a delegation clause, as argued by Defendant, whether there was an agreement between the parties at all is an issue properly decided by this Court. *See Will-Drill*, 352 F.3d at 219 ("In contrast, where the very existence of an agreement is challenged, ordering arbitration could result in an arbitrator deciding that no agreement was ever formed. Such an outcome would be a statement that the arbitrator never had any authority to decide the issue. A presumption that a signed document represents an agreement could lead to this untenable result. We therefore conclude that where a party attacks the very existence of an agreement, as opposed to its continued validity or enforcement, the courts must first resolve that dispute."); *see also Arnold v. Homeway, Inc.*, 890 F.3d 546, 550 (5th Cir. 2018) ("[W]here the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the federal courts have authority and responsibility to decide the matter.") (citation omitted).

[19] *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n. 1 (2006) (internal citations omitted).

then whether that contract may be enforced for or against the parties in the particular case is for an arbitrator to decide.[20]

Most of Tilley's opposition to the Motion relates to the merits of the case; however, Tilley argues that the arbitration clause should not be enforced against him because "the contract(s) between the Plaintiff and Uber are adhesion contracts and are totally unconscionable."[21] Specifically, Tilley contends that a potential Uber driver can avoid reading the arbitration agreement (*i.e.*, does not have to click on the hyperlink where the arbitration agreement is found) and thirty (30) days later, a driver can no longer access the hyperlink to read the arbitration agreement.[22] Tilley's argument that the arbitration agreement is unconscionable is a challenge to the making of the agreement itself,[23] and is for the Court to decide.[24]

To determine whether there was a valid agreement to arbitrate, this Court must apply ordinary state-law principles of contract.[25] The Rasier PAA provides that the agreement is

---

[20] *Bowles,* 954 F.3d at 725, citing *Will-Drill*, 352 F.3d at 218.

[21] R. Doc. 9, p. 1.

[22] *Id.*

[23] *Banc One Acceptance Corp. v. Hill*, 367 F.3d 426, 431 (5th Cir. 2004), citing *Dillard v. Merrill Lynch*, 961 F.2d 1148, 1154 (5th Cir. 1992) ("In *Dillard*, we held that where a party alleges that an arbitration agreement is adhesive, 'focus[ing] specifically on the arbitration provision as an adhesive term' allows the party resisting arbitration to meet the threshold requirements necessary to challenge the making of the arbitration agreement itself."); *see also Duhon v. Activelaf, LLC*, 2016-0818 (La. 10/19/16), 411 So.3d 605, 613 (noting that consideration of whether a contract of adhesion vitiates consent is a defense to the contract).

[24] Defendant argues that whether the arbitration provision is an unconscionable contract of adhesion is delegated to the arbitrator under the arbitration provision (R. Doc. 14, pp. 1-2); however, s*ee Henry Schein, Inc. v. Archer and White Sales, Inc*., 586 U.S. 63, 69 (2019) ("To be sure, before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists. See 9 U.S.C. § 2. But if a valid agreement exists, and if the agreement delegates the arbitrability issue to an arbitrator, a court may not decide the arbitrability issue."). Plaintiff's argument is that the arbitration provision is an adhesionary contract, putting the validity of arbitration agreement at issue, which requires the Court to determine whether an arbitration agreement exists before compelling arbitration. If Defendant is correct that the issue of whether the arbitration provision is an unconscionable contract of adhesion was delegated to the arbitrator, the result would be the same—the case would have to go to arbitration. *See Arnold*, 890 F.3d at 554 (finding that, because the plaintiff's challenge regarding the unenforceability of the arbitration provision was not specific to the delegation clause, that challenge had to be presented to the arbitrator) (citing *Rent-A-Ctr*., 561 U.S. at 71-72).

[25] *Will-Drill Res. Inc*., 352 F.3d at 214.

governed by the applicable law of the state where the driver resides when the PAA is accepted without reference to the choice of law principles that would result in the application of the law of a different jurisdiction.[26] The arbitration provision provides that it is governed by the FAA; however, if the FAA does not apply, "the law pertaining to arbitration agreements of the state where you reside when you entered into this Agreement shall apply."[27] Tilley is a citizen of Louisiana.[28] As there is no specific provision of the FAA governing contract formation ordinary state-law principles governing formation of contract apply. Therefore, Louisiana law applies to the question of whether the parties agreed to arbitrate.[29]

In Louisiana, the law's favorable treatment of arbitration agreements "[echoes] the Federal Arbitration Act."[30] Louisiana law requires that a valid and enforceable arbitration agreement contain the elements of offer and acceptance.[31] Additionally, under Louisiana law, formation of a valid contract requires four elements: "(1) the parties must possess the capacity to contract; (2) the

---

[26] R. Doc. 8-1, p. 25, ¶ 12.7.

[27] *Id,* at pp. 26-27, ¶ 13.1(a). The FAA also provides that the court makes the determination regarding whether there is an agreement to arbitrate. *See* 9 U.S.C. § 4, which provides in relevant part: "The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

[28] R. Doc. 7, ¶ 11; R. Doc. 7-1. There is no indication that Tilley was ever a citizen of any other state or that the arbitration agreement would have been accepted in any other state.

[29] *See Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 170 (5th Cir. 2004) (finding that 9 U.S.C. § 2 permits invalidation of arbitration agreements under generally applicable rules of state law).

[30] *Aguillard v. Auction Mgmt. Corp.,* 2004-2804 (La. 6/29/05), 908 So.2d 1, 7; *see also Duhon,* 411 So.3d at 609 ("Louisiana and federal law explicitly favor the enforcement of arbitration clauses in written contracts."); *id.* (noting that "federal jurisprudence interpreting the FAA may be considered in construing the [Louisiana Binding Arbitration Law ("LBAL")]"); La. Rev. Stat. Ann. §§ 9:4201, 9:4202 (expressing strong legislative policy favoring arbitration in LBAL).

[31] La. Civ. Code art. 1927.

parties' mutual consent must be freely given; (3) there must be a certain object for the contract; and (4) the contract must have a lawful purpose."[32]

Tilley and Defendant entered a valid, binding agreement to arbitrate. Defendant has presented evidence that Tilley expressly agreed to the Rasier PAA, which contains the arbitration agreement at issue, on February 22, 2024.[33] Tilley confirmed his agreement by checking the box next to a statement indicating that he reviewed and agreed to the Rasier PAA,[34] which he accessed through a password protected account he created.[35] Courts in this Circuit have held that this form of notice and consent, known as a "clickwrap agreement,"[36] suffices to bind individuals to the hyperlinked terms and conditions under Louisiana law.[37] Further, there is no dispute that Tilley's agreement was voluntary. The Rasier PAA specifically provided an opt out provision and the arbitration clause is clear that agreeing to arbitration is "not a mandatory condition" to become an Uber driver. The arbitration provision provides a 30-day opt out period and instructions on how to opt out.[38] Tilley does not argue that he opted out and Uber has presented evidence that its records show that Tilley did not opt out of the arbitration provision.[39]

---

[32] *Provenza v. Cent. & Sw. Servs., Inc.*, No. 34162 (La.App. 2 Cir. 12/15/00), 775 So.2d 84, 89, citing La. Civ. Code arts. 1918, 1927, 1966 & 1971.

[33] R. Doc. 8-1, p. 6 ¶¶ 14-15; pp. 26-39, 41.

[34] *Id.*, pp. 4-5, ¶¶ 8, 11; pp. 9, 11.

[35] *Id.*, p. 4, ¶¶ 7-8; p. 6, ¶ 13.

[36] *Hughes v. Uber Technologies, Inc.*, 718 F.Supp.3d 571, 580, n.36 (E.D. La. 2024), citing *Specht v. Netscape Comms. Corp.*, 306 F.3d 17, 22 (2nd Cir. 2002) (A 'clickwrap agreement' "allows an individual to agree electronically to the terms of a contract by selecting an 'I agree' box after being presented with a list of terms and conditions of use. It often 'appears on an internet webpage and requires that a user consent to its terms or conditions by clicking on a dialog box on the screen in order to proceed with the internet transaction.'").

[37] *Hughes*, 718 F.Supp.3d at 580, citing *Express Lien, Inc. v. Handle, Inc.,* No. 19-10156, 2021 WL 2476853, at *4 (E.D. La. June 17, 2021) (collecting cases); *Deshotel v. PayPal, Inc.*, No. 19-0373, 2020 WL 5813322, at *7 (W.D. La. Aug. 24, 2020), report and recommendation adopted sub nom. *Deshotel v. CardCash Exch. Inc.*, No. 19-373, 2020 WL 5807609 (W.D. La. Sept. 29, 2020) (collecting cases upholding clickwrap agreements).

[38] R. Doc. 8-1, p. 38, ¶ 13.8.

[39] *Id.*, at pp. 6-7, ¶¶ 16-17. The Declaration also notes that thousands of Uber drivers and providers have submitted requests to opt out of one or more of the arbitration provisions contained in the various agreements.

Tilley's argument that he should not be bound by the arbitration agreement because a person can avoid reading the agreement is without merit. Under Louisiana law, a person who signs a written instrument is presumed to know its contents and cannot avoid his obligations by contending (as Tilley suggests here) that he did not read the agreement, that it was not explained, or that he did not understand it.[40] Additionally, Tilley does not allege that he lacked capacity to enter into the arbitration agreement, that there was no object for the agreement, or that the agreement has an unlawful purpose.[41] Instead, Plaintiff argues that the arbitration agreement is adhesionary and unconscionable.

"In order to be invalidated, a provision must possess features of both adhesionary formation and unduly harsh substance."[42] Louisiana courts consider four factors in making this determination: "(1) the physical characteristics of the clause, including font size; (2) the distinguishing features of the clause; (3) the mutuality of the clause, in terms of the relative burdens and advantages; and (4) the relative bargaining strength of the parties."[43]

In *Sutton's Steel & Supply, Inc. v. Bellsouth Mobility, Inc.*, a Louisiana appellate court found an arbitration clause in a standard contract used by the defendant to be adhesionary because the clause at issue was in "exceedingly small print," the customers were in no position to bargain over the arbitration provision, and the substance of the provision was "unduly burdensome and

---

[40] *Hughes*, 718 F.Supp.3d at 580, citing *Express Lien*, 2021 WL 2476853, at *4 (noting that this finding "is consistent with Louisiana law holding that 'signatures are not mere ornaments' and that 'a person who signs a written instrument is presumed to know its contents and cannot avoid its obligations by contending that he did not read it, or that it was not explained or that he did not understand it'" (cleaned up)).

[41] Indeed, arbitration is not just a lawful but favored object. *See e.g., Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (noting federal policy favoring arbitration). Under Louisiana law, parties are free to contract for any object that is lawful, possible, and determined or determinable. *See* La. Civ. Code art. 1971.

[42] *Iberia Credit Bureau, Inc.*, 379 F.3d at 167 (citations omitted).

[43] *Bopp v. Indep. Specialty Ins. Co.*, No. 23-18, 2023 WL 2185412, at *4 (E.D. La. Feb. 23, 2023), citing *Aguillard*, 908 So.2d at 9; *see also Turnipseed v. APMT, LLC*, No. 18-5187, 2018 WL 5977889, at *2 (E.D. La. Nov. 14, 2018).

extremely harsh."[44] In contrast, the arbitration provision in this case is not in small print; rather the agreement is in standard type and the introduction to the provision is bolded and capitalized with the following notice: "**IMPORTANT: PLEASE REVIEW THIS ARBITRATION PROVISION CAREFULLY, AS IT WILL REQUIRE YOU TO RESOLVE DISPUTES WITH US ON AN INDIVIDUAL BASIS THROUGH FINAL AND BINDING ARBITRATION, EXCEPT AS PROVIDED BELOW**…."[45] Further, Tilley had bargaining power not to agree to the arbitration provision, which expressly says that the contract with Uber is not contingent on agreeing to arbitration.[46] In other words, Tilley was not required to agree to arbitrate disputes with Uber to become a driver for Uber. Finally, the provisions of the arbitration provision are not unduly burdensome or harsh. The agreement provides that essentially all claims between Tilley and Uber, regardless of which party brings such claims, will be resolved by arbitration.[47] In other words, the arbitration provision does not impose a high burden on only one of the parties, but binds both parties to arbitration, not just Tilley.[48] Finally, as to bargaining strength, the fact that Tilley could opt out of the arbitration provision without adversely impacting his ability to become a driver for Uber suggests that, as to the arbitration agreement, the parties were not on particularly unequal footing. Under these facts, the arbitration provision is not adhesionary or unconscionable.

---

[44] 2000-511 (La.App 3 Cir. 12/13/00), 776 So.2d 589, 596-97.

[45] R. Doc. 8-1, p. 26, ¶ 13.

[46] *Id.*, at p. 38, ¶ 13.8(a) ("Agreeing to this Arbitration Provision is not a mandatory condition of your contractual relationship with us….").

[47] *Id.*, at p. 26, ¶ 13.1(b) ("This Arbitration Provision applies to all claims whether brought by you or us….").

[48] *See Iberia Credit Bureau, Inc.,* 379 F.3d at 169 (noting that Louisiana appellate cases have deemed one-sided arbitration clauses unconscionable and unenforceable).

*Duhon v. Activelaf, LLC*,[49] upon which Plaintiff relies, is distinguishable. While the Louisiana Supreme Court did find the arbitration provision in *Duhon* was adhesionary and unenforceable, the court was clear that such a determination must be made on a case-by-case basis.[50] In that case, the court relied on the following facts to reach its conclusion: there was no check the box feature next to the arbitration language; the two-sentence provision mandating arbitration was not contained in a separate paragraph or set apart in any way, rather, it was "camouflaged" within an eleven (11) sentence paragraph among nine (9) sentences that did not discuss arbitration; and the arbitration lacked mutuality, requiring only the plaintiff to consent to arbitration.[51] As noted above, none of the facts upon which the *Duhon* court relied to invalidate the arbitration provision in that case are present here. Instead, the arbitration provision here is separately set out; Plaintiff was required to expressly accept it by clicking a button that he agreed; the arbitration provision has a bolded and capitalized introductory paragraph which sets it apart from the other language of the Rasier PAA; and it is mutual, requiring both parties to submit their claims to arbitration.[52] Accordingly, the arbitration provision in this case is not adhesionary and unconscionable, as would be required to vitiate Tilley's consent to it.

---

[49] 411 So.3d 605.

[50] 411 So.3d at 613.

[51] *Id*. at 611-12. The *Duhon* court expressly noted that the fact the agreement may be a standard form contract was insufficient alone to make it a contract of adhesion. *Id.,* at p. 610 ("although a contract of adhesion is a contract executed in a standard form in the vast majority of instances, not every contract in standard form may be regarded as a contract of adhesion. Therefore, we are not willing to declare all standard form contracts adhesionary; rather, we find standard form serves merely as a possible indicator of adhesion."), citing *Aguillard,* 908 So.2d at 10.

[52] The other cases cited by Plaintiff are likewise distinguishable. *Golz v. Children's Bureau of New Orleans*, 326 So.2d 865 (La. 1976) dealt with the question of whether a notarial act of surrender by parents of a child to a licensed adoption agency was valid and irrevocable. The *Golz* court rejected the plaintiffs' argument that the act of surrender was a contract of adhesion, stating "As we have noted, the parents were fully aware of the content and effect of the instrument before they signed it. We conclude, as did the trial judge, that the surrender represents a free and deliberate exercise of free will. This being true, the law gives it legal effect." *Id.* at 869. *Louisiana Power & Light Co. v. Mecom*, 357 So.2d 596 (La.App. 1 Cir. 3/20/78) rejected the idea that courts in Louisiana had even adopted the theory of adhesionary contracts, notwithstanding the Louisiana Supreme Court's earlier decision in *Golz*. That court further held that, even if such a theory were recognized, the power to disregard clauses in contracts should only be exercised where the clause in question was "unduly burdensome or extremely harsh." *Id*. at 598.

### C. The Question of Arbitrability of the Claims Must Go to the Arbitrator Pursuant to a Valid Delegation Clause

Because the parties entered into a valid agreement to arbitrate, the only other question before the Court is whether there is a valid delegation clause.[53] A delegation clause is a provision in an arbitration agreement that "transfer[s] the court's power to decide threshold questions of arbitrability to the arbitrator."[54] The arbitration provision here provides that all claims must be "resolved only by an arbitrator through final and binding arbitration . . . includ[ing] without limitation disputes arising out of or relating to the interpretation, application, formation, scope, enforceability, waiver, applicability, revocability or validity of this Arbitration Provision or any portion of this Arbitration Provision."[55] This clause is similar to other clauses that have been held to be valid and enforceable delegation clauses. For example, in *Kubala*, the Fifth Circuit found the following to be a valid delegation clause: "The arbitrator shall have the sole authority to rule on his/her own jurisdiction, including any challenges or objections with respect to the existence, applicability, scope, enforceability, construction, validity and interpretation of this Policy and any agreement to arbitrate a Covered Dispute."[56] The *Kubala* court noted that the clause was similar to a clause that had been upheld in *Rent-A-Center*, which provided as follows: "The Arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute

---

[53] *Kubala*, 830 F.3d at 203 ("Because Supreme asserts that the agreement contains a valid delegation clause, our analysis is initially narrow. If we determine that the agreement does contain such a clause, the role of the federal courts is strictly limited—we must refer the claim to arbitration absent some exceptional circumstance. If the agreement does not contain a delegation clause, we must perform the ordinary arbitrability analysis.").

[54] *Id.* at 201.

[55] R. Doc. 8-1, pp. 26-27, § 13.1(b). Though the delegation clause delegates "formation" issues to the arbitrator, without a validly formed contract, the arbitrator would have nothing to decide, and whether a valid arbitration contract exists is an issue for the courts to decide. Therefore, as explained above, the Court addresses Plaintiff's adhesion argument. *Supra* n.18, 24.

[56] *Kubala*, 830 F.3d at 204.

relating to the interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement is void or voidable."[57]

As in *Kubala*, Plaintiff does not address the delegation clause or point to any external reason (under federal labor law or otherwise), why his claim should not be sent to arbitration. This Report and Recommendation does not address the merits of whether Plaintiff's particular claims must be arbitrated rather than tried in court. The only remaining issue before this Court is who answers that question. The delegation clause of the arbitration provision between the parties is clear that it is the responsibility only of the arbitrator.[58]

## III. Conclusion and Recommendation

Defendant and Plaintiff entered a binding, valid arbitration agreement which contains an enforceable delegation clause, requiring referral of Plaintiff's claims in this case to arbitration. Accordingly,

**IT IS RECOMMENDED** that the Motion to Compel Arbitration and Stay Proceedings,[59] filed by Defendant Uber Technologies, Inc., be **GRANTED**, compelling that Plaintiff Duke Ellington Tilley, Jr.'s claims in this case be sent to arbitration and that this case be stayed pending a final disposition of the arbitration.

Signed in Baton Rouge, Louisiana, on July 22, 2026.

Erin Wilder-Doomes

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[57] *Id.*, citing *Rent-A-Ctr.*, 561 U.S. at 66.

[58] *See Reyna v. International Bank of Comm.*, 839 F.3d 373, 379 (5th Cir. 2016) ("Because the arbitration agreement contains a delegation clause, any disputes about the arbitrability of [the plaintiff's] claim or the scope of the arbitration agreement must be decided by the arbitrator, not the courts.").

[59] R. Doc. 8.